UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


LIBERTY MUTUAL INSURANCE CO.                    CIVIL ACTION

VERSUS                                          NO: 06-3206

ZURICH AMERICAN INSURANCE CO.                   SECTION: "R"(5)


**ORDER AND REASONS**

Before the Court is defendant Zurich American Insurance
Company's motion for summary judgment relating to whether an
"occurrence" took place.  For the following reasons, the Court
GRANTS defendant's motion for summary judgment.


**I.    BACKGROUND**

Plaintiff, Liberty Mutual Insurance Company, sued defendant,
Zurich American Insurance Company, seeking a declaratory judgment
under 22 U.S.C. § 2201 that Zurich must contribute to the defense
and indemnity costs that Liberty Mutual has paid with regard to
F.L. Crane & Sons, Inc., a subcontractor both parties have

insured.  Liberty Mutual issued F.L. Crane a commercial general liability insurance policy covering the period of January 1, 2001 through January 1, 2002.  Zurich issued F.L. Crane a commercial general liability policy for a period of three years, from January 2, 2002 to March 1, 2005.  The parties dispute their obligations to defend and indemnify F.L. Crane in a Louisiana state lawsuit, *Touro Infirmary v. Sizeler Architects, et al.,* 02-6220, Civil District Court for the Parish of Orleans.

The Touro litigation began in April of 2002, when Touro sued Sizeler Architects for breach of contract and negligence in the construction of Woldenberg Village, an elderly care facility in Algiers, Parish of Orleans. ("Touro Pet.", R. Doc. 16-6).  In its Fifth Amended Petition, Touro added F.L. Crane as a defendant, alleging negligence, redhibition, breach of warranty, and allegations of products liability in F.L. Crane's manufacturing, distribution, and installation of the exterior insulation and finishing system ("EIFS") of the facility. ("Fifth Am. Pet.", R. Doc. 16-7).  Liberty Mutual agreed to defend F.L. Crane in the Touro lawsuit under a reservation of rights. (Pl.'s Compl. ¶ 6).  Liberty Mutual settled the case with Touro for $125,000 and, as of May 15, 2007, had spent $296,905.12 on attorneys' fees. ("Pl.'s Resp. Interrogs.", R. Doc. 16-9).  Liberty Mutual sued Zurich in federal court on June 19, 2006, seeking a declaratory

2

judgment that Zurich had a duty to defend F.L. Crane in the Touro lawsuit and that Liberty Mutual was not obliged to defend or indemnify F.L. Crane.  Liberty Mutual also seeks attorneys' fees and costs. (Pl.'s Compl. at 7-8).

Zurich contends that Mississippi substantive law governs interpretation of the Zurich insurance policy, and that under Mississippi law, Touro's claims against F.L. Crane do not constitute an "occurrence" and therefore are not covered by Zurich's insurance policy.  Liberty Mutual argues that the pleadings in the Touro litigation do allege an "occurrence."  The Court addresses these arguments below.

## II.  LEGAL STANDARD

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The

moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

## III. DISCUSSION

### A.   Choice of Law

The parties dispute whether the Court should apply Louisiana or Mississippi law to the insurance policy Zurich American issued to F.L. Crane. It is well-settled that a federal court sitting in diversity must apply the choice of law rules of the forum state. *See Marchesani v. Pellerin-Milner Corp.*, 269 F.3d 481, 485 (5th Cir. 2001); *New England Merchants National Bank v.*

4

*Rosenfield*, 679 F.2d 467, 471 (5th Cir. 1982).  This Court's decision as to choice of law is thus governed by the Louisiana Civil Code. *See id.*  Louisiana Civil Code article 3515 provides the general rule to determine which state's law applies when there is a conflict. *See id*. at cmt. (c).  Article 3515 reads:

> [A]n issue in a case having contacts with other states is governed by the laws of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

La. Civ. Code Ann. art. 3515 (West 2007).

When a contract is at issue, Louisiana Civil Code article 3537 provides the rule to determine which state's laws would be most seriously impaired.  The Court should evaluate:

> the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue

5

imposition by the other.

La. Civ. Code Ann. art. 3537 (West 2007).  Accordingly, the first step is to identify "the relevant policies of the involved states." *Id.* cmt. (d). The second step is to evaluate "the strength and pertinence of [these] policies" in light of "(1) the factual contacts of each involved state to the parties and the transaction, (2) the 'nature, type and purpose of the contract,' and (3) the policies listed in clause (3)." *Id.*

Applying this framework, the Court finds that Mississippi law governs its interpretation of the Zurich insurance policy.[1] First, the Supreme Court of Louisiana has itself recognized that Mississippi has a significant interest in regulating insurance policies issued in Mississippi to insureds incorporated in Mississippi. *See Champagne v. Ward*, 893 So. 2d 773, 788 (La. 2005) (finding that "Mississippi has an interest in the regulation of its insurance industry and in the contractual obligations that are inherent parts thereof"); *see also Harrison v. R.R. Morrison & Son, Inc.*, 862 So. 2d 1065, 1070 (La. App.

---

[1]    Neither insurer is a resident of either Louisiana or Mississippi; therefore their residency does not affect the Court's choice of law analysis.  Liberty Mutual is a Massachusetts corporation with its principal place of business in Massachusetts and Zurich is a New York corporation with its principal place of business in Illinois. (Pl.'s Compl. ¶ 1; Def.'s Answer ¶ 2).

2003) ("Mississippi has a legitimate interest in regulating insurance policies executed in Mississippi, especially when an insurance policy is issued to a Mississippi business insuring all its activities.").

Second, the "pertinent contacts" of each state with the parties and the transaction favor this Court's application of Mississippi law. *See* La. Civ. Code Ann. art. 3537.  Mississippi is the place of negotiation and formation of the insurance contract.  The insured, F.L. Crane, is incorporated and has its principal place of business in Mississippi. ("Miss. St. Sec. Report", R. Doc. 16-12).  A Mississippi agent issued the policy in Mississippi. ("Zurich Policy" at 2, R. Doc. 16-10, 16-11). The purpose of the contract is to insure the business activities of F.L. Crane, a Mississippi resident. *See, e.g.,* La. Civ. Code Ann. art 3537.

On the other hand, although Louisiana has an interest in guaranteeing that innocent victims injured in Louisiana are fully compensated, *see, e.g., Champagne,* 893 So. 2d at 788, that policy interest will not be impaired by this Court's application of Mississippi law.  The only contact that Louisiana has with this case is that the plaintiff in the underlying lawsuit, Touro, is a Louisiana resident, and the alleged injury occurred in Louisiana. Touro, however, settled its claim against F.L. Crane with Liberty

Mutual.  No Louisiana resident will be affected by this Court's denial or grant of insurance coverage. (*See* Pl.'s Resp. Interrogs.).  Based on similar facts, the Louisiana Fifth Circuit Court of Appeal held that Texas law, rather than Louisiana law, governed the interpretation of a liability insurance contract that the parties contracted for in Texas and the insurance company issued to companies doing business in Texas, even though the injury occurred in Louisiana. *See Shell Oil Co. v. Hollywood Marine, Inc.*, 701 So. 2d 1038 (La. App. 1997).  The court explained its reasoning as follows:

> Although, the injury occurred in Louisiana, the injured party has been compensated and his judgment against Shell satisfied, and accordingly he has *no* interest in the outcome of *this* proceeding.  Louisiana's interest arises *only* because a Delaware corporation, with its principal place of business in Texas, seeks indemnity under a policy of insurance issued in Texas to recover payment it made to recompense for damages it caused to a Louisiana citizen.  We do *not* believe that this interest is sufficient to override the compelling interest Texas has in regulating insurance contracts written in Texas and issued to Texas companies.

*Id.* at 1041.  Here, the injured party has been compensated, and a Massachusetts insurance company is seeking indemnity from a New York company for the defense of an insured from Mississippi. Even though Louisiana is the place where F.L. Crane allegedly caused injury, that does not override the pertinent contacts of Mississippi with the insurance contract and this action. *See,*

*e.g., Fallon v. Superior Chaircraft Corp.*, 884 F.2d 229 (5th Cir. 1989) (applying Italian law to seller's third-party action against Italian manufacturer's insurers, even though chair was sold and used in Louisiana and caused injury there, because the policy was issued in Italy by an insurer doing business in Italy to an insured domiciled in Italy); *Harrison*, 862 So. 2d at 1070 (applying the law of the state where the contract was entered into and noting that "Louisiana has no connection to the insurance policy other than the fact that it is one location among many that is considered the object of the contract.").

Liberty Mutual makes two arguments in opposition to defendant's assertion that Mississippi law governs this Court's interpretation of its insurance contract.  It first contends that summary judgment is "*per se* inappropriate" on the choice of law issue. (Pl.'s Opp'n at 7-8).  Liberty Mutual relies for this proposition on the Louisiana case, *Ark-La-Tex Timber Co. v. Georgia Cas. & Ins. Co.*, 516 So. 2d 1217 (La. App. 2d Cir. 1987). Zurich contends that this case has been overruled by the Louisiana legislature.  Although state law controls the substantive aspects of this diversity case, *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), federal law controls the procedural aspects. *Hanna v. Plumer*, 380 U.S. 460 (1965).  This Court is guided by federal law and the Federal Rules of Civil Procedure in

making summary judgment determinations, and therefore does not rely on *Ark-La-Tex Timber*.

Liberty Mutual next argues that Zurich failed to proffer sufficient facts to establish that its insurance policy is governed by Mississippi law.  Liberty Mutual does not, however, provide any arguments or evidence in favor of the Court's applying Louisiana law.  Further, Liberty Mutual does not dispute that the policy was issued to a Mississippi corporation, through a Mississippi agent, and that the insured's business address on the policy is in Mississippi.  Liberty Mutual has failed to produce any evidence that raises an issue of fact as to the nature of the contacts between the insurance contract and the State of Mississippi.  The Court finds that based on Mississippi's interest in regulating insurance contracts entered into in Mississippi, and the factual contacts of this insurance contract to Mississippi, the interests of the State of Mississippi would be most seriously impaired if its law were not applied in this case, and therefore Mississippi law governs this Court's interpretation of the Zurich insurance policy. *See Harrison*, 862 So. 2d at 1071; La. Civ. Code ann. arts. 3515, 3537.

### B.   Mississippi Contract Law

"Under Mississippi law, an insurance policy is a contract subject to the general rules of contract interpretation." *ACS Const. Co., Inc. v. CGU*, 332 F.3d 885, 887 (5th Cir. 2003). The insurance policy must be construed as a whole. *Holloman v. Holloman*, 691 So. 2d 897, 899 (Miss. 1996). If it is unambiguous, the court will decide its meaning as a matter of law and enforce the contract as written. *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So. 2d 400, 403 (Miss. 1997). When a contract is ambiguous, a court should strictly construe the policy against the insurer. *Titan Indem. Co. v. Estes*, 825 So. 2d 651, 656 (Miss. 2002). However, "a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured." *Titan Indem.*, 825 So. 2d at 656.

Under Mississippi law, when there is a question of a party's duty to defend or indemnify, the Court looks to the allegations stated in the underlying complaint. *Am. Guarantee & Liab. Ins. Co. v. 1906 Co.*, 273 F.3d 605, 610 (5th Cir. 2001). The Court will find a duty to defend if the allegations state a claim within or arguably within the scope of coverage. *Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 225 (5th Cir. 2005). To determine whether Zurich owed a duty to defend or indemnify F.L. Crane, the Court must consider whether the allegations in the underlying petitions state a claim within or arguably within

11

the scope of the insurance policy's coverage, as interpreted by Mississippi law. *See id.*

## C.  "Occurrence"

Zurich argues that under Mississippi law, it owes no duty to defend F.L. Crane because Touro's underlying allegations of defective construction do not constitute an "occurrence" under the commercial general liability policy.  Zurich's commercial general liability policy states in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of ... "property damage" to which this insurance applies. ...
>
> This insurance applies to ... "property damage" only if: (1) The ... "property damage" is caused by an "occurrence" ...
>
> An "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(Zurich Policy at 16, 27).  "Accident" is not defined in the contract.  Zurich argues that under Mississippi law, an accident occurs only when the insured did not intend the underlying action.  Zurich concludes that it owes no duty to defend F.L. Crane because F.L. Crane intended to install the EIFS and exterior cladding, even if it did not intend the consequences of its faulty installation, including that the building would have leaks that would cause the growth of mold and mildew.  Liberty Mutual, relying on two Northern District of Mississippi cases,

12

*Scottsdale Insurance Company*, 2006 WL 2375367 (N.D. Miss. 2006), and *Essex Insurance Company v. Greenville Convalescent Home, Inc.*, 2006 WL 2347495 (N.D. Miss. 2006), *aff'd in part, vacated in part,* 2007 WL 1625696 (5th Cir. 2007),[2] argues that F.L. Crane's actions were accidental because it did not intend to sell or install defective products, and therefore there was an "occurrence."

The Court's review of relevant Mississippi and Fifth Circuit case law reveals that this jurisprudence does not find that an intentional act, negligently carried out, amounts to an "accident" for the purposes of insurance coverage.  In *Allstate Ins. Co. v. Moulton*, 464 So. 2d 507 (Miss. 1985), the Mississippi Supreme Court first set out the test for when an insured's actions are intentional and not accidental.  The case presented the issue whether Allstate Insurance Company was obliged to defend and indemnify Mrs. Moulton, its insured, in an action against her for malicious prosecution.  Mrs. Moulton sued Mr. Walls, alleging that he stole her dog.  After the charges were

---

[2] In *Essex*, the Fifth Circuit affirmed in part and vacated in part the district court's opinion, but addressed in its opinion only appellant's arguments regarding the negligent hiring and supervision exclusion and expected or intended injury exclusion.  The Court did not address whether there was an "occurrence." *See Essex Ins. Co. v. Greenville Convalescent Home, Inc.*, 2007 WL 1625696 (5th Cir. 2007).

dismissed, Mr. Walls filed an action for malicious prosecution against Mrs. Moulton, who notified Allstate, her insurer, that it had a duty to defend her. *Id*. at 508.  The insurance policy contained similar language to the one in this case, including that an "'occurrence' means an accident." *Id*.  The Mississippi Supreme Court held that Allstate had no duty to defend Mrs. Moulton because her actions were not an accident, even if she did not intend their consequences. *Id.* at 510.

> The implication is clear that, whether prompted by negligence or malice, (1) appellant's acts were committed consciously and deliberately, without the unexpected intervention of any third force, and (2) the likely (and actual) effect of those acts was well within appellant's foresight and anticipation.

*Id*. at 509.

The following year, in *Berry v. McLemore*, 795 F.2d 452 (5th Cir. 1986), the Fifth Circuit applied *Moulton* to hold that a town's liability insurer did not have to indemnify the town for a judgment against a police officer who shot a person under custodial arrest.  The Court found there was no accident or "occurrence" because the officer intentionally committed the underlying act of firing the gun.[3] *Id.* at 458.  The Court noted

---

[3] The town's insurance policy defined an "occurrence" as "[a]n accident, including continuous and repeated exposure to conditions, which result[s] in bodily injury or property damage neither expected [n]or intended from the standpoint of the insured." *Berry*, 795 F.2d at 456.

that even if the officer testified that he intended only to fire a warning shot, not to actually hit the person, "the question of intent does not relate to whether the defendant intended to harm the plaintiff but rather to whether the defendant intended to take the action that caused the harm." *Id.* at 457 n.4.  The insurance policy excluded coverage for intentional acts, therefore the court held that the insurer did not have to pay for the judgment against the officer.

In *U.S. Fidelity & Guaranty Company v. Omnibank*, 812 So. 2d 196 (Miss. 2002), the Mississippi Supreme Court held that "an insurer's duty to defend under a general commercial liability policy does not extend to negligent actions that are intentionally caused by the insured." *Id.* at 202.[4]  Omnibank filed a third-party complaint against its insurer alleging that the insurer had a duty to defend it in an underlying lawsuit.[5] In the underlying lawsuit, Omnibank was sued by plaintiffs on

---

[4] The Fifth Circuit had certified to the Mississippi Supreme Court the question "whether, under Mississippi law, an insurer's duty to defend under a general commercial liability policy for injuries caused by accidents extends to injuries unintended by the insured but which resulted from intentional actions of the insured if those actions were negligent but not intentionally tortious." *Id.* at 197.

[5] The OmniBank insurance policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 199.

whose behalf OmniBank had allegedly force-placed insurance
coverage, thereby increasing their loan, premiums, and interest
payments.  They sued OmniBank alleging that OmniBank either
negligently or intentionally committed, among other wrongs,
fraud, breach of fiduciary duty, breach of the duty of good faith
and fair dealing, and breach of contract. *Id.* at 197-98.  The
Court applied *Moulton* and held that OmniBank's insurer had no
duty to defend because OmniBank intended to make a loan to the
underlying plaintiffs, intended to require them to maintain
insurance, intended to place collateral protection insurance
provisions in their loan agreements, and intended to include
their premiums in their finance charges. *Id.* at 201.[6]

In *ACS*, *supra*, the case most factually similar to the one
before this Court, the Fifth Circuit once again held that under
Mississippi law, when a commercial general liability policy
defines an "occurrence" as an "accident," there is no coverage if
the underlying act was intentional and deliberate, even if its

------

[6] The *OmniBank* court also reconciled *Moulton* with another
Mississippi Supreme Court case, *Southern Farm Bureau Cas. Ins.
Co. v. Allard*, 611 So. 2d 966 (Miss. 1992), in which Allard shot
his brother-in-law in the leg, but claimed that he did not intend
to shoot him.  Under an insurance policy with the same exclusion,
a jury found that the shooting was unintentional.  The
Mississippi Supreme Court affirmed the trial court's judgment and
held that *Allard* was consistent with *Moulton* "in that they both
address the nature of the insured party's conduct, not the
resulting damages of that conduct." *Omnibank*, 812 So. 2d at 201.

consequences were unintended. *Id*. at 892.  ACS had contracted

with the U.S. Army Corps of Engineers to construct munitions

bunkers.  ACS then subcontracted with another construction

company to install a waterproofing membrane on the roofs.  After

the subcontractor installed the waterproofing membrane, some of

the roofs began to leak. *Id*. at 887.  ACS sought coverage from

its commercial general liability insurer for the cost of the

needed repairs.  ACS's insurer determined that no coverage

existed because, under the policy, there was no "occurrence".[7]

*Id*. at 887.  The Fifth Circuit agreed, holding that ACS's intent

to subcontract the installation of the waterproofing membranes

and its intent to install the waterproofing membrane on the

bunker roofs did not constitute an "occurrence" under the policy.

*Id*. at 893. "[E]ven though the installation of the membrane was

done negligently, the action of installing the membrane was not

accidental nor unintended to implicate coverage under the

policy." *Id.* at 890.

Under Mississippi law, it is clear that Touro's Fifth

Amended Petition challenges conduct that was intended but that

negligently caused unintended harm.  Touro states that "F.L.

---

[7] The ACS insurance policy defined "occurrence" as "an
accident, including continuous or repeated exposure to
substantially the same general harmful conditions." *Id*. at 890.

Crane [was] one of the subcontractors hired to install the EIFS system and exterior cladding of the Facility." (Fifth Am. Pet. ¶ 5(y)).  In its second cause of action, Touro alleges that F.L. Crane "negligently installed the exterior cladding system, including the EIFS and brick, and substantially deviated from the plans and specifications." (*Id.* ¶ 29).  F.L. Crane committed the underlying act of installing the EIFS intentionally.  It allegedly used faulty workmanship, which resulted in unintended damage.  Nevertheless, pursuant to *Omnibank* and *ACS*, *supra*, even if F.L. Crane was only negligent, "the action of installing ... was not accidental nor unintended." *See ACS*, 332 F.3d at 890.

Liberty Mutual cites *Scottsdale* and *Essex*, *supra*, for the proposition that the "underlying action" in *ACS* "was not the installation of the membrane that turned out to be faulty, causing leaks.  Rather, the underlying action was hiring the subcontractor to install the membrane, which the contractor did intend to do." (Pl.'s Opp'n at 13 (quoting *Scottsdale*, 2006 WL 2375367 at *7)).  Plaintiff argues that *ACS* held only that *hiring* the subcontractor was intentional and that because F.L. Crane did not hire any third party, its "underlying action," the installation of a defective EIFS, masonry, and exterior cladding system, was not intentional. (Pl.'s Opp'n at 14).  Plaintiff's argument that F.L. Crane's actions in installing the EIFS were

unintentional cannot be reconciled with *ACS*.  In *ACS*, the Fifth Circuit specifically stated "the action of installing the membrane was not accidental nor unintended to implicate coverage under the policy." *Id.* at 890.  The Court later reiterated, "[h]iring the subcontractors *and* installing the waterproofing membranes were not accidents under the terms of the policy." *Id.* at 891 (emphasis added). *See also Fairmont Specialty Ins. Co. v. Smith Poultry & Farm Supply, Inc.*, 2006 WL 2077584, at *4 (S.D. Miss. 2006) ("it is abundantly clear that a claim for defective construction, whether negligent or intentional, is not covered under the "occurrence" definition contained in this, and most any other, commercial general liability policy").  Zurich therefore had no duty to defend F.L. Crane against allegations of negligent installation.

Touro also alleges that F.L. Crane was "negligent in failing to warn plaintiff regarding the use of low-permeable, defectively designed, and moisture-trapping exterior cladding EIFS system ... in the New Orleans metropolitan area, a hot, humid environment."[8] (Fifth Am. Pet. ¶ 28).  The Fifth Circuit has held that omissions, including failures to warn, can be intentional acts.

-------

[8] Touro additionally alleged that F.L. Crane negligently failed to follow generally accepted construction practices in constructing the Touro facility. (Fifth Am. Pet. ¶ 23).

In *Acceptance Insurance Company v. Powe Timber Company Inc.*, 219 Fed. Appx. 349 (5th Cir. 2007), the Fifth Circuit held that a timber company's failure to warn consumers that the wood chips it sold were treated with chemicals was intentional, and therefore not an "occurrence" under its insurance policy. *Id.* at 352.  The district court had rejected the insured's argument that because the underlying allegations involved a failure to act they created the potential for coverage. *See Powe*, 403 F. Supp. 2d 552, 556 (S.D. Miss. 2005).  The Fifth Circuit affirmed, noting that there was "no suggestion in the complaints that Powe intended to include a warning, but inadvertently did not do so." *Powe*, 219 Fed. Appx. at 352; *see also Evanston Ins. Co. v. Neshoba County Fair Ass'n*, 442 F. Supp. 2d 344, 347 (S.D. Miss. 2006) (holding that an alleged refusal to provide medical assistance was not an accident and therefore the underlying lawsuit did not involve allegations of an "occurrence"). *But see Essex*, 2006 WL 2347495 at *3 (nursing home defendants' negligent failure to provide adequate care was an accident because there was no evidence defendants intended to fail to provide adequate care).  The Court finds that Zurich had no duty to defend F.L. Crane against allegations that it failed to warn and failed to follow generally accepted construction practices.

In its third cause of action, Touro alleges that the

exterior cladding EIFS system contains a redhibitory defect. Plaintiff alleges that F.L. Crane "knew that the product [it] sold had a defect, but omitted to declare it." (Fifth Am. Pet. ¶ 38).  This is an allegation of intentional conduct for which F.L. Crane was not covered under the Zurich policy.

Finally, Touro alleges that F.L. Crane is liable for breach of warranty because it "manufactured and/or distributed an exterior cladding EIFS system that contributed to the support and growth of mildew and stains at the Facility." (Fifth Am. Pet. ¶ 41).  Although F.L. Crane's described connection with the Facility at the beginning of Touro's Fifth Amended Petition states only that he was "hired to install," this later allegation includes F.L. Crane and a few other defendants as alleged distributors of the EIFS and exterior cladding. (Fifth Am. Pet. ¶¶ 5(y), 41).  Liberty Mutual asserts that Zurich owed a duty to defend because, although F.L. Crane intended to sell and install the EIFS, "F.L. Crane did not intend to sell and install EIFS, masonry and exterior cladding that was *defective* ..." (Pl.'s Opp'n at 14).  The Court does not find that there is a principled way to find that intentional installation that causes unintended harm is "intentional" under Mississippi law, but intentional distribution of a product that causes unintended harm is not.

The *Powe* case is analogous to plaintiff's breach of warranty

claim in addition to the failure to warn claim.  In *Powe*, the
plaintiffs alleged that defendant was liable for breach of
warranty because it sold plaintiffs wood chips for use in cooking
and heating that caused them harm because the wood chips were
toxic.  The district court held that plaintiffs' allegations
"undeniably involve intentional acts by the insured and thus do
not implicate coverage under the subject policies." 403 F. Supp.
2d at 556.  Although Liberty Mutual points the court to
*Scottsdale*, *supra*, in which the court held that because there was
"no evidence that Bungee Racers intended to sell a defective
product ... there was an 'occurrence' with regard to the subject
policy," the Court respectfully disagrees with that Court's
reading of ACS. *See Scottsdale* at *6.

The Court finds that under Mississippi law, the underlying
allegations of the Touro complaint allege intentional actions by
F.L. Crane that were not an "occurrence" under the Zurich policy.
There is no "occurrence" and therefore no insurance coverage for
F.L. Crane's installation of the EIFS and exterior cladding that
caused damages either through the use of faulty materials or
through faulty workmanship, *see ACS, supra; Fairmont Specialty
Ins. Co.*, 2006 WL 2077584 (finding no "occurrence" when
underlying complaint alleged defective materials and workmanship
in the construction of five chicken houses.").  The Court finds

that there is also no "occurrence" if F.L. Crane intentionally
sold Touro materials that contributed to the support and growth
of mildew. *See, e.g., Berry*, 795 F.2d at 457 n.4 ("the question
of intent does not relate to whether the defendant intended to
harm the plaintiff but rather to whether the defendant intended
to take the action that caused the harm"); *Omnibank*, 812 So.2d at
197 ("If the acts themselves were not accidental, even if they
may have been negligent, then there is no 'occurrence.'").


**IV.   CONCLUSION**

For the foregoing reasons, defendant's motion for summary
judgment is GRANTED.


New Orleans, Louisiana, this <u>13th</u> day of November, 2007.

SARAH S. VANCE
UNITED STATES DISTRICT COURT